ADMAN PRODUCTS COMPANY, Plaintiff-Appellant, v. FEDERAL IN-
SURANCE COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—87—2258

Opinion filed August 9, 1989.

William J. Sneckenberg & Associates, Ltd., of Chicago (William J. Sneckenberg and Lisa J. Brodsky, of counsel), for appellant.

Brinton & Bollinger, of Chicago (Timothy I. McArdle, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

This is an appeal from summary judgment for the defendant in a declaratory judgment action. The issue presented for review is whether the defendant, Federal Insurance Co. (Federal), is obligated to defend a property damage action on behalf of the plaintiff, Adman Products Co. (Adman), pursuant to a comprehensive general liability insurance policy issued by Federal to Adman. The trial court ruled that Federal does not have a duty to defend Adman on the ground that two exclusion clauses preclude coverage of the damaged property. We affirm.

Adman is an Illinois corporation engaged in the business of assembling advertising displays. Between 1975 and June 1, 1984, Adman contracted with National Creative Merchandising Corp. (NCM) to assemble displays. Throughout their business relationship, NCM delivered display materials owned by NCM or its customers to Adman for assembly. On June 1, 1984, a fire at Adman's facility located at 4444 West Chicago Avenue damaged or destroyed displays and display materials owned by NCM or its customers. NCM filed an amended three-count complaint against Adman on October 8, 1985, which Adman tendered to Federal. Federal declined Adman's request to provide a defense against NCM's complaint, prompting Adman to file a declaratory judgment action against Federal. Federal in turn filed a counterclaim and third-party complaint against Adman and NCM seeking a declaratory determination that Federal is not obligated to defend Adman and is not liable under the policy to Adman or NCM for the property damage.

The policy contains the basic coverage provision that "[t]he company will pay on behalf of the insured all sums which the insured shall become obligated to pay as damages by reason of liability *** for bodily injury, property damage or personal injury caused by an occurrence." Federal also promised to "defend any suit against the insured

seeking damages on account of such bodily injury, property damage or personal injury, even if the allegations of the suit are groundless, false or fraudulent." In dispute, however, are two exclusionary clauses which the trial court found were in the nature of a "care, custody or control" exclusion. They state as follows:

"Nor does this insurance apply to:

* * *

14. property damage to:

* * *

b. property held by the insured for sale or property entrusted to the insured for storage or safekeeping;

c. property while on premises owned or occupied by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured * * *."

After submission of briefs and a hearing, the trial court accepted Federal's contention that the damaged displays and display materials were property for which coverage was excluded under clauses 14(b) and 14(c).

As a general rule, the duty to defend is determined by comparing the allegations of the complaint with the terms of the policy. (*International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 366, 522 N.E.2d 758.) It is often stated that in determining whether there is potential coverage, only the allegations contained in the complaint may be considered. (*Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 1070, 416 N.E.2d 758.) The insurer must defend the insured if the complaint alleges facts within, or potentially within, policy coverage. (*Tuell v. State Farm Fire & Casualty Co.* (1985), 132 Ill. App. 3d 449, 452, 477 N.E.2d 70.) It is also well settled that where the allegations fall within policy coverage, the duty to defend exists despite knowledge acquired independently by the insurer that the allegations are untrue. *Consolidated Rail Corp. v. Liberty Mutual Insurance Co.*, 92 Ill. App. 3d at 1070.

Summary judgment is granted only where the pleadings and the affidavits and depositions, if any, show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) Adman initially contends on appeal that Federal improperly submitted deposition testimony in conjunction with its motion for summary judgment, contending that the trial court is limited by the general rule that only the allegations in the underlying complaint may be considered in de-

termining whether the insurer is under a duty to defend. (*Consolidated Rail Corp. v. Liberty Mutual Insurance Co.*, 92 Ill. App. 3d at 1070.) Though this contention has been rejected in the context of the declaratory judgment action (*Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 304, 461 N.E.2d 471), we do not address the question, for we find that coverage is excluded by the allegations of the underlying complaint without considering extrinsic evidence.

■■ ■ In interpreting an insurance policy, the court must effectuate the intent of the parties as expressed by the contract. (*State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 255, 430 N.E.2d 641.) Any ambiguity in the policy is construed against the insurer. (*State Farm Fire & Casualty Co.*, 103 Ill. App. 3d at 255.) A provision is ambiguous if more than one reasonable interpretation may be given. (*State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App. 3d at 255.) However, where there is no ambiguity, the policy terms are given their plain and obvious import. (*State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App. 3d at 255.) In determining whether any ambiguity exists, the court should consider the subject matter of the contract, the facts surrounding its execution, the situation of the parties, and the predominate purpose of the contract, which is to indemnify the insured. *State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App. 3d at 255.

■ When a policy exclusion is asserted to deny coverage, its applicability must be free from doubt. (*Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 695, 700.) Count I alleges that Adman is liable for negligent maintenance of its building. Count II alleges liability on a bailment theory. Count III alleges breach of contract for failure to procure insurance. The parties agree that counts II and III do not allege facts falling within policy coverage.

In count I, NCM describes the damaged property as follows:

> "On June 1, 1984, property belonging to NCM and its customers was in the possession of Adman. Such property consisted of work-in-progress, stored merchandise, parts and materials for use in the assembly of displays designed by NCM and finished goods belonging to NCM and its customers on Adman's premises for pick-up by or delivery to NCM or its customers."

Adman concedes that work in progress, stored merchandise, and parts and materials for use in assembly are property falling within the exclusions relied upon by Federal. Adman argues, however, that finished goods fall in neither exclusion and are therefore covered. More

specifically, Adman contends that clause 14(b) is not applicable because its possession of the finished goods was only incidental to the service provided for NCM and did not amount to storage or safekeeping. Adman further contends that clause 14(c) does not preclude coverage because "finished goods" are property waiting for pick-up or delivery and are not in its possession for the purpose of performing operations. Therefore, Adman asserts that Federal must defend it against NCM on the ground that "the duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured even if only one or some of them are within the policy coverage." See, *e.g., Tuell v. State Farm Fire & Casualty Co.* (1985), 132 Ill. App. 3d 449, 452, 477 N.E.2d 70.

Citing *Topeka Ry. Equipment v. Foremost Insurance Co.* (1980), 5 Kan. App. 2d 183, 614 P.2d 461, Adman advances a persuasive argument that clause 14(b) is not applicable as its possession of NCM's goods was only incidental to the services NCM contracted for. In *Topeka*, the insured was in the business of modifying and repairing railroad cars. Pursuant to a contract with the United States government, the insured modified railroad cars owned by the government at an Air Force base. Once the cars were delivered to the base, the insured had control over the property. Two cars were damaged when one car rolled down the track, striking the other. The court held that an exclusionary clause identical to 14(b) did not preclude coverage because the storage or safekeeping of the cars was only incidental to the bailment and not the primary reason for which the cars were delivered to the insured. (*Topeka Ry. Equipment*, 5 Kan. App. 2d at 186, 614 P.2d at 464.) The court ruled that more than a mere bailment was required to invoke the storage or safekeeping exclusion. *Topeka Ry. Equipment*, 5 Kan. App. 2d at 185-86, 614 P.2d at 463. See also *Prahm v. Rupp Construction Co.* (Minn. 1979), 277 N.W.2d 389, 390-91.

■ However, while *Topeka* is persuasive in support of Adman's contention that clause 14(b) is not applicable, we affirm the trial court's ruling on the basis that clause 14(c) excludes coverage. We agree that the very purpose for NCM's goods to be on Adman's premises was to have work performed on the goods. Despite this fact, Adman argues that clause 14(c) does not preclude coverage of finished goods because operations are not being performed on finished goods. To adopt Adman's interpretation would require us to believe that the parties contemplated that goods delivered to Adman's premises would be covered until Adman began performing operations on the goods, at which time coverage ceased, and then coverage would again commence when Adman completed its work on the goods. Adman pro-

vides no explanation as to why it would desire such a policy or why Federal would provide such a policy. We do not believe that this is what the parties contemplated upon binding themselves to the policy. Clause 14(c) is unambiguous. It excludes coverage of property that is on Adman's premises for the purpose of having operations performed on such property. The excluded property is defined by the purpose for which it is on premises owned or rented by Adman. Clause 14(c) makes no distinction regarding what stage the property is in, whether it be at the beginning or end of the operations.

We also find that *Topeka* supports our conclusion that clause 14(c) excludes coverage. The policy issued to the insured in *Topeka* also contained an "operations" exclusion identical to clause 14(c). Before addressing the applicability of the "storage or safekeeping" exclusion, the court summarily disposed of the "operations" exclusion, stating that the exclusion would have applied if the cars had been on premises owned by or rented to the insured. (*Topeka Ry. Equipment*, 5 Kan. App. 2d at 185, 614 P.2d at 463.) The exclusion did not apply because the insured was a permissive user of the railroad tracks at the Air Force base at the time of the occurrence. In describing the status of the boxcars at the time of the incident, the court noted that the two damaged cars were awaiting modification. Because the "operations" exclusion would have applied had the insured owned or rented the premises, it is clear by necessary implication that the exclusion's applicability was not affected by the fact that work had not yet begun. It follows, therefore, that the exclusion is not affected where the work has been completed. Therefore, we hold that the finished goods are not covered under the policy as clause 14(c) precludes coverage. Consequently, Federal is under no duty to defend Adman.

The judgment of the circuit court is affirmed.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.