James A. FRANKLIN, et
al., Respondents,

v.

WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,
petitioner, Appellant.

Nos. C6–96–1684, C6–96–1748.

Supreme Court of Minnesota.

Jan. 8, 1998.

Rehearing Denied March 3, 1998.

Gislason, Martin & Varpness, P.A., James
T. Martin, Dan T. Ryerson, Edina, for Appel-
lant.

Lapp, Laurie, Libra, Abramson & Thomson, Chtd., Richard T. Thomson, David A. Harbeck, Minneapolis, for Respondents.

## OPINION

GARDEBRING, Justice.

This case calls upon us to determine whether a counterclaim for trespass arising from a lease dispute triggers an insurer's duty to defend an insured under a Comprehensive General Liability policy and a broad form endorsement. Because we conclude that the counterclaim, although alleging trespass, was plainly grounded in a contract dispute, we hold that Western National owed no duty to defend Franklin against the counterclaim.

Respondent Franklin Outdoor Advertising Company ("Franklin") constructs and maintains outdoor advertising structures, many of which are located on land that Franklin leases for the purpose. Franklin purchased liability insurance from appellant Western National Mutual Insurance Company ("Western National"), including a Comprehensive General Liability ("CGL") Policy, insuring against bodily injury and property damage, and a Broad Form Comprehensive General Liability Endorsement ("broad form endorsement"), insuring against personal injury and advertising injury.

A dispute arose over one of Franklin's leases when the lessors, the Laudenbachs, wished to sell a portion of the leased property to a third party and claimed the right, pursuant to a clause in the lease, to terminate the lease and order the removal of Franklin's signs. The Laudenbachs sent Franklin a notice to vacate and Franklin refused to comply. Franklin commenced an action against the Laudenbachs in Stearns County, the *situs* of the property, seeking judicial construction of the lease under which Franklin erected and maintained its sign on the Laudenbach property. In their answer

to the complaint, the Laudenbachs asserted numerous counterclaims, including, *inter alia*, fraud, breach of contract, and trespass. Under the count alleging "Trespass," the counterclaim asserted:

> Franklin, Inc. intentionally refuses to remove its sign from the premises of Defendants, despite demand to remove said signs. Plaintiff has intentionally kept its signs on Defendants' property although not legally privileged to do so.

Relying on the trespass claim, Franklin tendered its defense to Western National, which refused to defend Franklin in the declaratory judgment action.

Franklin then commenced this action against Western National in Hennepin County, seeking indemnification and a declaratory judgment that Western National owed Franklin a duty to defend under the CGL policy, including the broad form endorsement. On July 15, 1994, Franklin was granted partial summary judgment in the underlying litigation, dismissing the Laudenbachs' trespass claim. Three days later, the trial court in Hennepin County granted Franklin partial summary judgment against Western National, holding that the Laudenbachs' counterclaim for trespass was "arguably covered" under the insurance policy and that Western National had a duty to defend Franklin.[1] The court of appeals affirmed Western National's duty to defend, but remanded the case for reconsideration of attorney fees. We reverse.

Interpretation of an insurance policy, and its application to the facts of the case, are questions of law. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992). The existence of a legal duty to defend or indemnify is also a legal question, which this court reviews de novo. *Auto–Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn.1996). An insurer's duty to defend is distinct from and broader in scope than the duty to indemnify. *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 825 (Minn.1980). We have consistently held that an insurer's duty to defend arises when

---

1. Neither the trial court nor Western National was aware, at the time, of the Stearns County judgment, issued three days prior.

any part of the claim against the insured is arguably within the scope of protection afforded by the policy. *Auto–Owners,* 547 N.W.2d at 698. An insurer seeking to escape the duty to defend bears the burden of establishing that all parts of a cause of action clearly fall outside the scope of coverage. *Id.*

█ An insurer may ordinarily determine whether a cause of action includes an "arguably covered" claim by comparing the wording of the policy to the allegations of the underlying complaint. *Ross v. Briggs and Morgan,* 540 N.W.2d 843, 847 (Minn.1995). However, the words of the complaint need not precisely match the words of the policy, they must simply put the insurance company on notice of a claim within the policy coverage. *See Garvis v. Employers Mut. Cas. Co.,* 497 N.W.2d 254, 258 (Minn.1993). Any ambiguity regarding coverage is resolved in favor of the insured. *SCSC Corp. v. Allied Mutual Ins. Co.,* 536 N.W.2d 305, 316 (Minn. 1995).

### Coverage under the Broad Form Endorsement

█ Franklin argues first that Western National owed a duty to defend under the broad form endorsement, which provided coverage in the event of personal injury. The endorsement's personal injury coverage is triggered by the occurrence of one of several enumerated types of actions, including "wrongful entry or eviction or other invasion of the right of private occupancy." Franklin contends that the trespass claim constituted a claim of an "invasion of the right of private occupancy." Western National, however, argues that since the underlying action was nothing more than a declaratory action to construe the meaning of the Laudenbach lease, the claim did not allege a "wrongful entry * * * or other invasion of the right of private occupancy," and therefore did not trigger a duty to defend.

Here, the pleadings clearly demonstrate that the underlying dispute between Franklin and the Laudenbachs was, in essence, a

contract dispute. Both the original complaint and the Laudenbachs' answer and counterclaim state the facts upon which the dispute is based. Both are replete with references to a lease signed by the parties under which Franklin erected and maintained an outdoor advertising sign. Both documents make clear that the heart of the dispute is whether the handwritten phrase "subject to development" allowed the Laudenbachs to terminate the lease. The counterclaim alleged that the lease agreement was fraudulently obtained and violative of Minn.Stat. §§ 325D.09–.16 (1996), the Unlawful Trade Practices Act. The relief requested in the counterclaim focused exclusively on the lease agreement. It specifically requested injunctive relief restraining Franklin from enforcing the sign lease, requiring Franklin to record a release of the document registered with the county recorder, prohibiting Franklin from including "rights of first refusal" in leases, and requiring Franklin to re-draft its lease for all future transactions.

Because the pleadings clearly manifest that the dispute concerned the terms of the contract, rather than a "wrongful entry * * * or other invasion of the right of private occupancy," we hold that Western National did not owe Franklin a duty to defend the counterclaim under the broad form endorsement.

### Coverage under the CGL Policy

█ Franklin argues, second, that Western National owed a duty to defend Franklin based on the property damage protection afforded by the CGL policy.[2] The CGL policy covered property damage, including "loss of use" of property not physically injured, when the loss results from an "occurrence." "Occurrence" is further defined within the policy as an "accident * * * which results in * * * property damage *neither expected nor intended* from the standpoint of the insured" (emphasis added). In the case before us, the alleged trespass on the Laudenbachs' property might be considered a "loss of use."

---

**2.** Because the trial court and the court of appeals found coverage under the broad form endorsement, neither court reached the issue of a duty to defend under the provisions of the CGL policy.

However, because we find no coverage under the broad form endorsement, in order to forestall additional litigation, we reach the claimed alternative basis for coverage.

The parties disagree whether the trespass was an "occurrence" covered by the policy. This court has previously construed an "occurrence" under a nearly identical policy to require three elements: (1) an accident; (2) resulting in property damage; (3) neither expected nor intended by the insured. *Johnson v. AID Ins. Co. of Des Moines, Iowa,* 287 N.W.2d 663, 664 (Minn.1980). Franklin argues that, although it did intend to leave its sign on the Laudenbachs' land after being ordered to vacate, it did not intend or expect any damage to result from trespass. Western National argues that the Laudenbachs' damage was highly expectable from Franklin's intentional acts and should not be covered under its CGL policy.

We are persuaded that the rationale of *Bituminous Casualty Corp. v. Bartlett,* 307 Minn. 72, 240 N.W.2d 310 (1976) controls the outcome in the present case:

> [An] insurer is in the business of distributing losses due to such property damage among a large number of policyholders. It is able to properly set premiums and supply coverage only if those losses are uncertain from the standpoint of any single policyholder. If the single insured is allowed through intentional or reckless acts to consciously control the risks covered by the policy, a central concept of insurance is violated. * * * A contractor who knowingly violates contract specifications is *consciously controlling his risk of loss and has not suffered an occurrence.*

307 Minn. 72, 78–80, 240 N.W.2d 310, 313–14 (1976) (emphasis added), *overruled in part by Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389 (Minn.1979).

Under the facts of the present case, Western National did not have a duty to defend Franklin in what was essentially a breach of contract claim. Franklin made intentional decisions, not to comply with the Laudenbachs' notice to vacate and to commence a declaratory judgment suit against the Laudenbachs. The Laudenbachs' response was a highly predictable outcome of Franklin's business decision and does not qualify as an "occurrence" under the CGL policy. Requiring Western National to defend Franklin against its own business decisions would im-

permissibly allow Franklin to consciously control its risk of loss. Furthermore, the trespass count in the counterclaim specifically referred to *intentional* acts by Franklin, thereby taking it outside the definition of "occurrence." Consequently, the claim in trespass did not trigger a duty to defend Franklin under the property damage coverage of the CGL policy.

Because we hold that Western National did not owe Franklin a duty to defend under either the broad form endorsement or the CGL policy, we need not reach any of the other issues raised by Western National.

Reversed.